UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NICHOLAS BOHN; NATASHA McCORMICK; and ERIC WECKMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE MOSAIC COMPANY and MOSAIC FERTILIZER, LLC<br><br>    Defendants. | Civ. No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through their attorneys, as and for their complaint against Defendants allege as follows:

**INTRODUCTION**

1.  Plaintiffs bring this action against Defendants for water monitoring and property damage because the Floridan aquifer and/or the Surficial and Intermediate aquifers (the "Floridan Aquifer" that provides groundwater to Plaintiffs have been contaminated as a result of Defendants' actions and omissions.

2.  On or around August 27, 2016 a sinkhole developed at Defendants' New Wales phosphate fertilizer manufacturing plant located in Mulberry, Florida ("New Wales Facility"). The sinkhole is located on Defendants' property within an onsite storage facility under Defendants' direct control, and is the cause of radioactive and other chemical waste contamination in the Floridan Aquifer.

3.  Defendants' conscious actions and omissions disregarded foreseeable risks to human health and safety and to the environment.

4.      Residents in the communities that surround the New Wales Facility have legitimate concern for the integrity and safety of their water supplies as the toxic radioactive and other chemical wastewater is in the Floridan Aquifer causing, and will continue to cause, water contamination.

5.      Plaintiffs bring this suit on behalf of themselves and all those similarly situated to recover damages from Defendants who recklessly and negligently managed, operated and stored toxic radioactive wastewater produced from Defendants' New Wales Facility.

## PARTIES

**Plaintiffs**

6.      Plaintiff Nicholas Bohn is a citizen and resident of Lithia, Florida with a mailing zip code of 33547.  Mr. Bohn is a homeowner who obtains his water from a private well located on his residential property.

7.      Plaintiff Natasha McCormick is a citizen and resident of Lithia, Florida with a mailing zip code of 33547.  Ms. McCormick is a homeowner who obtains her water from a private well located on her residential property.

8.      Plaintiff Eric Weckman is a citizen and resident of Lithia, Florida, with a mailing zip code of 33547.  Mr. Weckman is a home renter who obtains his water from a private well located on the rental property.

**Defendants**

9.      Defendant The Mosaic Company is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 3033 Campus Drive, Plymouth, Minnesota 55441.

10.     The Mosaic Company owns and operates phosphate and potash mines for the specific purpose of sending the raw materials to self-owned processing facilities, including The Mosaic Company's New Wales Facility located in Mulberry, Florida.

11.     Mosaic Fertilizer, LLC is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 3095 County Road 640 W, Mulberry, Florida 33860.

12.     Mosaic Fertilizer, LLC owns and operates a facility named New Wales, which produces finished phosphate products used in crop fertilizers and animal feed.

13.     At all times relevant, Mosaic Fertilizer, LLC operated the New Wales Facility at the direction and under the control of its parent, The Mosaic Company.

14.     Under the direction and control of its parent, Mosaic Fertilizer, LLC has operated and continues to operate the New Wales Facility with disregard to public and environmental safety.

## JURISDICTION AND VENUE

15.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff classes are citizens of states different from at least some of Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions by Defendants giving rise to the claims asserted herein occurred in this District, have caused harm to Class Members residing in this District, and Plaintiffs, Nicholas Bohn, Natasha McCormick and Eric Weckman, reside in this District.

## GENERAL FACTUAL ALLEGATIONS

**Background Regarding Defendant, The Mosaic Company**

17.     The Mosaic Company ("Mosaic") was established in 2004 following an agreement between Cargill, Inc. and IMC Global to form the new crop nutrition company.

18.     Mosaic is incorporated in Delaware, has its headquarters in Plymouth, Minnesota, and is publicly traded on the New York Stock Exchange using the stock moniker "MOS".

19.     Following its creation, Mosaic became the world's largest producer and marketer of concentrated phosphate and potash crop nutrients, each of which is the product of Mosaic's phosphate production facilities in Florida, Louisiana and Peru, and potash production facilities in New Mexico and Saskatchewan Canada.

20.     Additionally, Mosaic obtains the raw phosphate rock for its processing plants from Mosaic-owned mines in Central Florida and Saskatchewan Canada.

**Background Regarding Defendant, Mosaic Fertilizer, LLC**

21.     In May 2004, Mosaic's predecessor, Cargill, Inc., registered Cargill Fertilizer, LLC as a foreign limited liability company with the Florida Secretary of State.  Thereafter, Cargill Fertilizer, LLC began operating the phosphate processing plant located in Mulberry, Florida referred to herein as the "New Wales Facility".

22.     On October 25, 2004, Cargill Fertilizer, LLC changed its name to Mosaic Fertilizer, LLC ("Mosaic Fertilizer").  Mosaic Fertilizer continued and continues to operate at the New Wales Facility as a foreign corporation authorized to do business in the State of Florida.

23.     Mosaic Fertilizer's New Wales Facility is a phosphate fertilizer manufacturing plant, located at 3095 County Road 640, Mulberry, Florida 33860.

24.     The New Wales Facility is 4,000 acres in size and produces 4.8 million tons of phosphate fertilizer and animal feed ingredients each year.  It is currently the largest fertilizer manufacturing facility in the world.

25.     The New Wales Facility, operated by Mosaic Fertilizer, is Mosaic's primary source for phosphoric acid, the necessary ingredient in Mosaic's phosphate fertilizers.

26.     The Mosaic Company and Mosaic Fertilizer, LLC are collectively referred to herein as "Defendants".

**The Phosphoric Acid Process**

27.     Phosphoric acid is the product of wet slurries, made by combining ground phosphate rock with concentrated sulfuric acid.  This chemical combination creates phosphoric acid and calcium sulfate.  Additional water is added to the slurry to separate the calcium sulfate and other insoluble materials from the phosphoric acid.

28.     The separated calcium sulfate is commonly referred to as gypsum or phosphogypsum, and is a known byproduct of phosphoric acid wet processing.  Phosphogypsum is radioactive due to the presence of uranium and radium (elements naturally occurring in the raw phosphate rock).  The re-use or recycled use of phosphogypsum is prohibited by the EPA if the phosphogypsum has an average radium concentration of more than 10 picocuries per gram (pCi/g).  In such an instance, phosphoric acid manufacturers are required to store the radioactive phosphogypsum indefinitely in open storage areas called gypsum stacks, or gypstacks.

29.     Gypstacks are created by pushing original, natural surface soils into large piles or mounds, which serve as the initial sides of the gypstack.  The soil mounds create an earthen dam that receives and holds slurried phosphogypsum wastewater pumped from the manufacturing facility.  Solid gypsum within the slurry settles to the base and sides of the gypsum stack and

wastewater from the slurry is decanted into a cooling pond for later use in plant operations. The settled gypsum is then used to build up the original soil walls to increase the stack's height, allowing for increased storage capacity.

30.     For every ton of phosphoric acid made, approximately 5 tons of phosphogypsum are produced. As a result, gypstacks are very large and have the capacity to hold millions of gallons of the slurried radioactive phosphogypsum.

31.     Mosaic Fertilizer is required to store and maintain gypstacks onsite at the New Wales Facility because the facility produces phosphogypsum with radium concentrations averaging between 20-35 pCi/g. Currently, the New Wales Facility has one operational gypstack – The South Gypsum Stack.

32.     The New Wales Facility's South Gypsum Stack was built in two phases. Phase I was constructed in 1992 on 394 acres; it is located south of a cooling pond and is stacked 200 feet high. The construction of Phase II began in 2002, occupies 310 additional acres, consists of an east cell and a west cell, and is approved to have a final height of 300 feet. Additionally, Phase II provides for an increase to the height of the Phase I site from 200 to 300 feet high.

33.     The South Gypsum Stack operates in conjunction with an unlined cooling pond system. Together the gypstack and cooling pond comprise the New Wales Facility's phosphogypsum stack system. Mosaic Fertilizer operates its phosphogypsum stack system under Industrial Wastewater Facility Permit Number FL0036421 issued by the Florida Department of Environmental Protection ("FDEP").

**The Sink Hole**

34.     On or around August 27, 2016, Mosaic Fertilizer employees noticed dropped water levels at the west cell within the South Gypsum Stack, suggesting a leak of stored radioactive phosphogypsum wastewater.

35.     Shortly after the noted water loss, a sinkhole was observed.  The sinkhole formed at the base of the west cell located in New Wales' South Gypsum Stack, which held radioactive and other chemical-containing wastewater.  In the days and weeks that followed this observance, Mosaic Fertilizer notified the requisite regulatory authorities that radioactive wastewater was escaping from the gypstack.

36.     On or around September 16, 2016, Defendants confirmed media reports of a sinkhole at the New Wales Facility, which provided the public with knowledge of the contamination for the first time, nearly 3 weeks after Defendants were aware that radioactive wastewater was escaping from the west cell of the South Gypsum Stack and into the Floridan Aquifer.

37.     Presently, the sinkhole is approximately 45 feet in diameter and several hundred feet deep.  On information and belief, at least 215 million gallons of radioactive wastewater has escaped the South Gypsum Stack via the sinkhole.

38.     The escaped radioactive and other chemical-containing wastewater is comprised of radionuclides, spent sulfuric acid, wastewater generated from cleaning phosphoric acid production pipes and equipment, acidic cooling water with high concentrations of phosphorus and fluoride, and other contaminants that settle in the gypstack as a consequence of Defendants' manufacture of phosphoric acid.

39.     Solid gypsum contains a high concentration of radium-226, uranium, and other uranium decay products due to the separation and concentration of radionuclides that occurs during the production of phosphoric acid.

40.     In addition to radionuclides, gypsum contains metals in concentrations which the EPA believes may pose a hazard to human health and the environment.  The metals include, but are not limited to, arsenic, lead, cadmium, chromium, zinc, antimony, iron, and copper.

41.     The Mosaic Company has confirmed that the escaped radioactive and other chemical-containing wastewater has entered Florida's main source of groundwater, the Floridan Aquifer.

42.     As recently as September 2015, Mosaic Fertilizer entered into a Consent Decree with the United States Environmental Protection Agency and the Department of Justice, which, in part, cited Mosaic Fertilizer for violations of the federal Resource Conservation and Recovery Act (RCRA), and required Mosaic Fertilizer to investigate "reasonable and practicable methods to reduce the volume of pond water within Mosaic's main Cooling Pond that would be lost in the event of a sinkhole."[1]

43.     On information and belief, as of August 2016, Mosaic Fertilizer had not taken the steps necessary to reduce the risk of 215 million gallons of radioactive wastewater from draining into the Floridan Aquifer via a sinkhole.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs incorporate the paragraphs 1 through 43 as though the same were set forth at length herein.

---

[1] Consent Decree, Appendix 7 at 8 [Document 22-3], *United States, et al. v. Mosaic Fertilizer, LLC*, (8:15-cv-02286) (The parties agreed to the terms of the Consent Decree in September 2015.   The Consent Decree and its Appendixes were signed and entered by the Judge on August 5, 2016.).

45.     Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and (b)(3).     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

46.     Plaintiffs bring this class action on behalf of the following classes, as set forth below:

**Private Well Water Property Damage Class**
All individuals who, as of August 27, 2016, or anytime thereafter, were/are owners of real property located within 5-miles of the sinkhole at Defendants' New Wales Facility, and who obtain their water supply from a privately owned well.

**Private Well Water Nuisance Class**
All individuals who, as of the time a class is certified in this case, are owners or lessors of real property located within 5-miles of the sinkhole at Defendants' New Wales Facility, and who receive their water supply from a privately owned well.

47.     Excluded from the classes set forth above are: (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (b) the Judges to whom this case is assigned and the Judges' staff; (c) any class counsel or their immediate family members; and (d) any State or any of its agencies.

48.     Plaintiffs reserve the right to amend the class definitions set forth above if discovery and/or further investigation reveal that any class should be expanded, divided into subclasses or modified in any way.

**Numerosity**

49.     There are approximately 5,000 individuals who live in within five (5) miles of the sinkhole who obtain their water from private wells and are impacted by the sinkhole.  It is estimated there are over 1,500 private wells in the impacted area.  Each of the classes set forth above is sufficiently numerous to warrant class treatment, and the disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court.

50.     Further, class members are readily identifiable from publically available information regarding property ownership and/or residential history.

**Typicality**

51.     Plaintiffs' claims are typical of the claims of the classes in that Plaintiffs, like all class members, are owners or lessors of real property that have experienced a diminution in value and/or nuisance due to the actions of the Defendants.  Further, all Plaintiffs obtain their water from private wells and without the relief sought herein are at risk of drinking or using contaminated water from Defendants' actions.

52.     Moreover, the factual bases of Defendants' misconduct are common to all class members and represent a common thread of misconduct resulting in injury to all members of the classes.

**Adequate Representation**

53.     Plaintiffs will fairly and adequately represent and protect the interests of the classes.   Plaintiffs have retained counsel with substantial experience litigating both environmental torts and class actions, including actions, like this one, representing putative

classes whose property has been devalued by the actions of a polluter and/or who have been exposed or at risk of being exposed to dangerous chemicals and need redress to prevent harm.

54.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the classes and have the financial resources to do so.  Neither Plaintiffs nor their counsel has interests adverse to the classes.

## Predominance of Common Questions

55.     Plaintiffs bring this action under Rule 23(b)(3) because there are numerous questions of law and fact common to Plaintiffs and the class members that predominate over any question affecting only individual class members.  The answers to these common questions will advance resolution of the litigation as to all class members.  These common legal and factual issues include:

    a.   Whether Defendants owed a duty to Plaintiffs and members of the classes to refrain from conduct reasonably likely to cause contamination of class members' private well water;

    b.   Whether Defendants knew or should have known that the storage of the radioactive phosphogypsum wastewater at its South Gypsum Stack was unreasonably dangerous to the environment and to Plaintiffs;

    c.   Whether Defendants knew or should have known that its New Wales Facility's South Gypsum Stack contained an unreasonably dangerous volume of radioactive wastewater;

    d.   Whether Defendants breached a legal duty to Plaintiffs and the classes by storing radioactive phosphogypsum wastewater at its South Gypsum Stack

with inadequate protection to prevent the creation or perpetuation of a sinkhole;

e.  Whether Defendants' breach of a legal duty caused and continues to cause Plaintiffs' and class members' private well water to be at imminent risk of contamination from the radioactive phosphogypsum wastewater;

f.  Whether it was foreseeable that Defendants' storage of radioactive phosphogypsum wastewater at its South Gypsum Stack would cause Plaintiffs' and class members' private well water to become at imminent risk of contamination and not fit for human consumption or use;

g.  Whether Defendants created and maintained a nuisance by consciously storing dangerously excessive volumes of radioactive phosphogypsum wastewater within the west cell of its South Gypsum Stack;

h.  Whether Defendants' storage of radioactive phosphogypsum wastewater at its South Gypsum Stack and the resultant sinkhole described herein substantially interfered and interferes with Plaintiffs' and class members' use and enjoyment of their property;

i.  Whether Defendants' storage of radioactive phosphogypsum wastewater at its South Gypsum Stack, and the resultant sinkhole described herein caused, and continues to cause, an imminent invasion of the property rights of Plaintiffs and class members;

j.  Whether Defendants caused the devaluation of Plaintiffs' and class members' property; and

k.  Whether Defendants' conduct warrants the imposition of punitive damages.

**Superiority**

56.     Plaintiffs and members of the classes have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

57.     Absent a class action, most class members would likely find the cost of litigating their claims to be prohibitively high and, therefore, would have no effective remedy at law. Further, without class litigation, class members will continue to incur damages.

58.     Class treatment of common questions of law and fact will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**Rule 23(b)(2) Injunctive or Declaratory Relief**

59.     In addition to the above, Plaintiffs bring this class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the classes, such that final injunctive relief or declaratory relief is appropriate with respect to each class as a whole.  Such injunctive relief includes, but is not limited to, an injunction to require immediate and regular testing of Plaintiffs' private well water; and, when the contamination is imminently threatening Plaintiffs' private wells, to install treatment sufficient to remove the toxic radioactive wastewater from Plaintiffs' private well water.

60.     Accordingly, Plaintiffs seek an injunction requiring Defendants to implement an immediate and regular testing program of Plaintiffs' private well water and, further, to install water treatment systems on Plaintiffs' wells sufficient to remove the contamination caused by Defendants' conduct.

61.     Finally, Plaintiffs and the classes seek a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs and members of the classes.

## Rule 23(c)(4) Certification of Particular Issues

62.     In the alternative to certification under Rule 23(b)(2) or 23(b)(3), Plaintiffs and the classes seek to maintain a class action with respect to particular issues under Rule 23(c)(4).

63.     Specifically, the liability of the Defendants is suitable for issue certification under Rule 23(c)(4).

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

## STRICT LIABILITY PURSUANT TO FLORIDA POLLUTANT DISCHARGE PREVENTION AND CONTROL ACT (§ 376.313 Florida Statutes)

64.     Plaintiff incorporates by reference the allegations set forth above in paragraphs 1 through 63 as if fully restated herein.

65.     At all relevant times, Defendants owned, operated and/or maintained the Mosaic New Wales Facility and the South Gypsum Stack.  The South Gypsum Stack is now the site of a massive sinkhole, which was first reported to government agencies in August 2016.  As a result of the sinkhole, hundreds of millions of gallons of radioactive and other chemical-containing wastewater was discharged from the gypstack and entered the Floridan Aquifer.

66.     At all relevant times, Defendants had a statutory duty to Plaintiffs and class members to maintain and operate the Mosaic New Wales Facility and its South Gypsum Stack so as not to create and/or to allow the creation of hazardous conditions due to the discharge of contaminants, as defined by Florida Statutes §§ 376.301(09), 376.301(10) and 376.301(12).

67.     At all relevant times, Defendants breached their statutory duty to Plaintiffs and

class members by discharging, or causing to be discharged, radioactive and other chemical-containing wastewater into the Floridan Aquifer, which Plaintiffs and class members use as the water source for private drinking water wells, agricultural activities, and other uses, in violation of Florida Statutes § 376.30 to § 376.317.  Defendant is strictly liable to Plaintiff under § 376.313(3).

68.     As the direct and proximate result of Defendants' statutory breach of duty, Plaintiffs and class members are unable to depend on groundwater pumped from the Floridan aquifer for their private well water for drinking water and other personal and business uses.

69.     By reason of the foregoing, Plaintiffs incurred and continue to incur damages, including but not limited to property damage, diminution of property value, risk of loss of their private well water supply, loss of use and enjoyment, and other economic losses, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

## STRICT LIABILITY FOR ABNORMALLY DANGEROUS ACTIVITY

70.     Plaintiffs incorporate by reference the allegations set forth in paragraph 1 through 63 as if fully restated herein.

71.     Defendants, as the owners and operators of the New Wales Facility, engaged in abnormally dangerous activities by the manner in which they maintained and operated the phosphogypsum wastewater stacks at its New Wales Facility – namely, the South Gypsum Stack. The collapse of the stack and resulting discharge of radioactive and other chemical-containing wastewater within the South Gypsum Stack is the result of a Defendants' overuse and dependence on the gypstack for long-term storage of billions of tons of radioactive waste byproduct produced from the manufacture of phosphoric acid.

15

72.     Defendants use and practices associated with toxic radioactive wastewater storage at the South Gypsum Stack (a) created a high degree of risk of harm to others: particularly, residents and property owners who depend on the Floridan Aquifer for their private well water supply, such as Plaintiffs and class members, (b) created a likelihood that the harm threatened by Defendants' activities would be great; (c) created a risk of harm that could have been eliminated prior to the creation of the sinkhole by the exercise of reasonable care but cannot now be eliminated; (d) were not a matter of common usage; and (e) were inappropriate to the place where and manner in which they were being carried on, in that they constituted a non-natural use of Defendant's facility which imposed and continues to impose an unusual and extraordinary risk of harm to residents and property owners who depend on the Floridan Aquifer for their water supply, such as Plaintiffs and class members.

73.     As a direct and proximate result of Defendants' conduct of engaging in the abnormally dangerous activities alleged herein, substantial amounts of toxic radioactive wastewater has been released and continues to be released from Defendants' South Gypsum Stack located at the New Wales Facility.  The harm sustained by Plaintiffs and class members is the result of Defendants' abnormally dangerous activities and was foreseeable by Defendants.

74.     By reason of the foregoing, Plaintiffs and class members incurred damages, including but not limited to property damage, and other economic losses, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

## NUISANCE

75.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 63 as if fully stated herein.

76.     This claim is brought under Florida law on behalf of Plaintiffs and the Property owner subclass.

77.     Defendants, through reckless and/or intentional acts and omissions alleged herein, have contaminated the Floridan Aquifer that is the source of Plaintiffs' and class members' private well water.

78.     Defendants' corporate practice of improperly storing dangerous volumes of radioactive phosphogypsum wastewater in the South Gypsum Stack located at the New Wales Facility was unreasonable, unwarranted and unlawful.

79.     The contamination of class members' drinking water has interfered with the rights of Plaintiffs and the classes to use and enjoy their property. Indeed, this interference is substantial in nature and includes: (a) the ability of Plaintiffs and class members to fully use the wells on their property which are their only sources of potable water, including the consumption or incidental ingestion of contaminated water, the use of contaminated water for agricultural needs and the use of contaminated water for their water-related activities; and (b) being unable to exploit the full economic value of their properties by sale or rental or by using the property at security for a loan.

80.     Defendants' reckless and/or intentional acts and omissions were unreasonable, unwarranted and unlawful, and constitute a continuous invasion of the property rights of Plaintiffs and the classes.

81.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs and the classes have incurred, and will continue to incur, costs and expenses related to the investigation, treatment, remediation, and monitoring of drinking water and the contamination of their respective properties, as well as the damages set forth below.

## **FOURTH CLAIM FOR RELIEF**

## **NEGLIGENCE**

82.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 63 as if fully stated herein.

83.     Defendants, directly or indirectly, caused radioactive and other chemical-containing wastewater from the South Gypsum Stack at its New Wales Facility to migrate into the groundwater and, thus, to threaten Plaintiffs' and class members' private water wells.

84.     At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the storage, handling, and maintenance of the South Gypsum Stack at its New Wales Facility, including the duty to take all reasonable steps necessary to ensure that the toxic radioactive wastewater does not migrate from the site and, especially, that the toxic radioactive wastewater does not enter Floridan Aquifer and contaminate groundwater.

85.     At all times relevant to this litigation, Defendants knew, or in the exercise of reasonable care should have known, of the hazards and dangers surrounding the South Gypsum Stack at its New Wales Facility, and specifically that failure to ensure the structural integrity of the phosphogypsum stack could cause toxic radioactive wastewater and other hazardous materials from the stank to enter and contaminate groundwater.

86.     Accordingly, at all times relevant to this litigation, Defendants knew, or in the exercise of reasonable care should have known, that the manner in which phosphogypsum waste was stored at the New Wales Facility could cause Plaintiffs' injuries and thus created a dangerous and unreasonable risk of injury to the Plaintiffs.

87.     Defendants also knew, or in the exercise of reasonable care should have known, that private well users were unaware of the risks and the magnitude of the risks associated with the storage of the phosphogypsum wastewater at Defendants' New Wales Facility.

88.     As such, Defendants breached their duty of reasonable care and failed to exercise ordinary care in the in the storage, handling, and maintenance of the South Gypsum Stack at its New Wales Facility, in that Defendants failed to properly maintain the stack, knew or had reason to know that failure to properly maintain the stacks could result in significant pollution and contamination of groundwater, and thus Plaintiffs' private water wells, and knew or had reason to know that such conduct created a significant risk of harm and unreasonably dangerous side effects and failed to prevent or adequately warn of these risks and injuries.

89.     Defendants knew, or should have known, that it was foreseeable that its methods of storage of toxic radioactive wastewater in the South Gypsum Stack at its New Wales Facility would injure individuals and/or businesses with private water wells, such as Plaintiffs, and that Plaintiffs would suffer injuries as a result of Defendants' failure to exercise ordinary care in the storage of its phosphogypsum waste.

90.     Plaintiffs did not know the nature and extent of the injuries that could result from Defendants' phosphogypsum waste stored in the South Gypsum Stack at their New Wales Facility.

91.     Defendants' negligence was the proximate cause of the injuries, harm, and economic loses that Plaintiffs suffered, and will continue to suffer, as described herein.

92.     Defendants' conduct, as described above, deviated from the standard that Defendants owed to Plaintiffs and class members.  Defendants regularly risk the safety of residents in the vicinity of its New Wales Facility, including Plaintiffs, with full knowledge of

the dangers of storing phosphogypsum waste without a proper maintenance and other precautions. Defendants made conscious decisions not to store its phosphogypsum waste in a manner that would prevent contamination of groundwater, including the groundwater relied on by Plaintiffs for drinking water and other personal and business uses.

93.     As a proximate result of Defendants' wrongful acts and omissions, Plaintiffs have been damages and continue to be damaged.

## FIFTH CLAIM FOR RELIEF

## GROSS NEGLIGENCE

94.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 63 as if fully stated herein.

95.     As described above, Mosaic and its subsidiary Mosaic Fertilizer consciously disregarded the EPA's warnings and specific suggestions/agreements in the 2015 consent decree related to the safe storage of radioactive wastewater in the South Gypsum Stack at the New Wales Facility.

96.     The actions and omissions of the Defendants, as specifically alleged in paragraphs 83 through 93 above, were reckless and in conscious disregard for the health and safety of Plaintiffs and class members.

97.     Mosaic's and Mosaic Fertilizer's actions constitute a conscious disregard or indifference to the life, safety, or rights of the Plaintiffs and the class.

98.     Such conduct triggers Plaintiffs' and class members right to seek punitive damages pursuant to Fla. Stat. Ann. § 768.72.

## PRAYER FOR RELIEF

**On the basis of the claims set forth herein, Plaintiffs demand the following relief:**

A. That the Court determine that this action may be maintained as a class action under Fed. R. Civ. P. 23(a), (b)(2) and (c)(4), that Nicholas Bohn, Natasha McCormick, and Eric Weckman be designated as Class Representatives, their counsel as Class counsel, and that the best practicable notice of this action be given to the members of the class;

B. That Plaintiffs and class members recover the damages determined to have been sustained by each of them respectively including diminution of the value of their real estate;

C. That Plaintiffs receive private well testing and monitoring for the specific purpose of detecting toxins contained in the Defendants' radioactive and other chemical-containing wastewater discharged from the New Wales Facility;

D. That Plaintiffs receive funding or reimbursement for private water well filters and/or other treatment following a positive water test that shows their private well is contaminated.

E. That Plaintiffs receive punitive damages awardable under Florida Statute;

F. That the Court, pursuant to Fla. Stat. Ann. § 376.313, award Plaintiffs' counsel their reasonable attorney's fees and reimbursement of all costs and litigation expenses;

G. That the Court grant such other and further general and equitable relief as may be deemed just and proper.

## INJUNCTIVE RELIEF SOUGHT

In addition to the above, Plaintiffs and the class seek injunctive relief including, but not limited to, implementation of a mandatory testing protocol requiring Defendants to immediately

and regularly test the wells of Plaintiffs and class members for the presence of radioactive and other chemicals associated with the wastewater that discharged from the South Gypsum Stack at the New Wales Facility into the Floridan Aquifer as a result of the sinkhole; to continue testing until it is determined that the risk of the contamination has ceased; to install permanent filtration devices on any private well testing positive for the presence of the above-mentioned contaminants, and to maintain those filtration devices pursuant to industry best practices.

## DEMAND FOR A JURY TRIAL

Plaintiffs, for themselves and for the class, hereby demand trial by jury on all issues so triable as a matter of right.

Dated: this 22nd day of September 2016

Respectfully submitted,

By: _____
John A. Yanchunis (Florida Bar No. 324681)
Frank M. Petosa (Florida Bar No. 972754)
Scott W. Weinstein (Florida Bar No. 563080)
Rene F. Rocha, III*
Marcio W. Valladares (Florida Bar No. 986917)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
fpetosa@forthepeople.com
sweinstein@forthepeople.com
rrocha@forthepeople.com
mvalladares@forthepeople.com


Mike Morgan (Florida Bar No.0062229)
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, Suite 1600

Orlando, FL 32801
Telephone: (407) 849-2383
Facsimile: (407) 245-3381


Robin L. Greenwald*
Pearl A. Robertson*
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, New York 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
rgreenwald@weitzlux.com
probertson@weitzlux.com


*Pro Hac Vice* Applications to be submitted

*Attorneys for Plaintiffs and Putative Class*

23